## MADRY vs. YOUNG.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, THE JUDGE OF THE FIFTH PRESIDING.

Where A exchanges with B, the negro Jack for Aaron, and takes a bill of sale from B, providing " that if he makes a satisfactory title to Aaron by a particular day, named in the obligation or bill of sale, in that event is to be void—otherwise to be in full force and virtue." The *intent* of such an obligation *is*, that B conveys Jack to A by a title *defeasible*, on his executing a good title to Aaron.

But in default of B's making a good title to Aaron, Jack is the property of A, in virtue of the bill of sale, who first exchanged him with B, on the aforesaid condition. A will hold Jack in despite of the vendee of B.

John B. Madry purchased the negro Jack, now in suit between the plaintiff and defendant, of one Henry Hunter, in January 1828, for 475 dollars ; Hunter had bought him of one Robert Dawson.

Previous to these transactions, and in November 1825, John G. Young, the defendant, purchased the same negro of Jos. Young, who had purchased him at the probate sale of a succession. John G. Young exchanged Jack with Robert

Dawson for another negro, (Aaron): but as Dawson was unable to execute a good title to Aaron, Young refused to make an absolute title to Jack. Dawson then executed an instrument, called in the State of Misissippi, where these transactions took place, a mortgage, which was duly recorded there November 25, 1825, in which he mortgages Jack to Young, for the purpose of securing a good title to Aaron. The mortgage and bill of sale contains the following proviso : that if Dawson, his heirs, etc. shall well and truly make or cause to be made, to the said John G. Young, his heirs, &c. a complete and satisfactory title to the negro Aaron, on or before the first day of January 1828, then and in that case, these presents to be null and void, otherwise to remain in full force or virtue." Dawson never did make any other title to Aaron, but in the mean time sells Jack to Hunter, who sold him to the plaintiff Madry. In May 1828, Young obtained the possession of Jack from Madry by getting the negro on his premises. The present suit was commenced to recover back the negro, who he alleges was *illegally* taken possession of by the defendant ; and lays his damages at $500.

The defendant alleges he purchased the negro of Joseph Young, who bought him at the sale of Hook's succession, 25th February 1825.

The jury found a verdict for the plaintiff, restoring him the negro, and 180 dollars in damages, and judgment accordingly.

The District judge charged the jury on the trial, " that if they found Dawson had sold and delivered the slave and received full value for him, it vested the legal title in Hunter and his vendee. This title being sold to Madry without notice, his title would be good. The mortgage sale of Jack by Dawson to Young was conditional, and its effect was to bind Dawson to make a good title to Aaron, or *pay his value* ; the title to Jack was only effected to make good the contract.

*Dunbar* for the plaintiff contended as follows :

O

Western District.
October, 1830.

MADRY
vs.
YOUNG

1. The bill of sale or mortgage from Dawson to Young is not valid as to third persons, because it is not an authentic act, or accompanied with delivery. La. Code. Art. 2231. 2415 and 2417.

2. The *Onus probandi* is on the appellant to shew delivery, as it cannot be inferred. The subsequent sales from Dawson to Hunter, and from him to Madry were attended with delivery, were good as to the parties themselves, and as to third persons.

3. There being no evidence to shew the legal effect in Misissippi of the bill of sale from Dawson to Young, it must be construed according to the laws of this state. Starkie. Ev. Part IV. 569, Note X.

*C. J. Scott* for defendant, urged that the title to the negro Jack had never legally passed to Dawson ; and relied on the bill of sale to shew that it never had ; and the negro still remained the property of Young.

Where A exchanges with B, the negro Jack for Aaron, and takes a bill of sale from B, providing "that if he makes a satisfactory title to Aaron by a particular day named, the obligation or bill of sale, in that event is to be void—otherwise to be in full force and virtue :" The *intent* of such an obligation *is*, that B conveys Jack to A by a title *defeasible*, on his executing a good title to Aaron. But in default of B's making a good title to Aaron, Jack is the property of A, in virtue of the bill of sale, who first exchang'd him with B, on the a-

*Martin J.* delivered the opinion of the Court. This was an action for the recovery of a slave. The defendant claimed title. At the trial he relied on a bill of sale from Dawson, to which was added a proviso, that if Dawson, his heirs, executors or administrators, shall well and truly make, or cause to be made to the said John G. Young, his heirs, executors, administrators or assigns, a complete and satisfactory title to the negro Aaron, on or before the first day of January 1828, then in that case these presents to be null and void— otherwise to remain in full force and virtue.

The Judge *aquo* instructed the jury that the effect of this sale was to bind Dawson to comply with the conditions, " which were to make a good title to Young, for the other negro given in exchange for Jack, or in default thereof to pay the value of him. The title of Jack was effected to make good this contract." To this part of the charge to the jury the defendant's took a bill of exceptions.

In our opinion, the intention of the parties was not that

Dawson should be bound either to make title for Aaron, or pay the value of him : but to convey to Young a title to Jack *defeasible* by the execution of a proper conveyance or title to Aaron. Certainly Dawson could not have destroyed Young's title to Jack by payment of the value of Aaron. Young's title was on the execution of the instrument he relied on, complete, though defeasible on a subsequent event which does not appear to have happened. It had at once full force and virtue, and by the term of the contract was to *remain* on the event not happening before the day named, in full force and virtue.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed—the verdict of the judge set aside, and the case remanded with directions to the judge, not to give to the jury the above part of his charge : the appellee paying costs in this Court.

foresaid condition. A will hold Jack in despite of the vendee of B.